# EXHIBIT D

Terrance L Kline
11/02/99 02:46 PM

To: Lonnie R Moyer/MECH/NICP/NAVSUP@NAVSUP
cc:
Subject: Re: Monitor Windows for "110 Roof Project"

Since you have found three or more manufacturers that can meet the specification, to reduce the number form the 20 psi would serve no purpose.

I agree that the contractor should choose from the manufacturers that can meet all aspects of the specification.

Are there any additional issues.
Lonnie R Moyer

Lonnie R Moyer
11/02/99 09:08 AM

To: Terrance L Kline/MECH/NICP/NAVSUP@NAVSUP
cc:
Subject: Monitor Windows for "110 Roof Project"

Terry,

As you know, I gave a list of three window manufacturers who can meet the spec. for water resistance, to the ROICC office. These manufacturers were: Graham Architectural Products, J. Sussman Inc., and Forte, Inc. Another manufacturer, Peterson Window Corp. has said that they can meet the spec. , but I have not received their information yet. The requirement in the spec is for a water resistance test of 20 psf with no leaks. This requirement should have been 10 psf or perhaps even lower. Bob Rosenberry has advised me that we should not revise this requirement at this time. The consequences may be as follows: (1) The contractor used this item as an excuse for his time delay. A change now would justify his delays and may cost us for delays. (2) LD's would be canceled. (3) Other bidders may file a complaint since they would have bid on the original spec.

R/ L. Moyer

PLAINTIFF'S EXHIBIT 3 4-12-05

# EXHIBIT E

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

M. MAROPAKIS CARPENTRY, INC., :
PLAINTIFF :
:
VS : NO. 03-2825C
:
THE UNITED STATES, : (JUDGE BASKIR)
DEFENDANT :

DEPOSITION OF: LONNIE R. MOYER

TAKEN BY: PLAINTIFF

BEFORE: KAREN BLOUCH, RMR
NOTARY PUBLIC

DATE: APRIL 13, 2005, 9:00 A.M.

PLACE: RHOADS & SINON
ONE SOUTH MARKET SQUARE
HARRISBURG, PENNSYLVANIA

APPEARANCES:

RHOADS & SINON
BY: DAVID W. FRANCIS, ESQUIRE

FOR - PLAINTIFF

U.S. DEPARTMENT OF JUSTICE
BY: JAMES D. COLT, ESQUIRE
AND
DEPARTMENT OF THE NAVY
BY: ALAN CARAMELLA, ESQUIRE

FOR - DEFENDANT



e3f17cf1-0865-43a7-a27d-c089332e976a

listed, windows, hardware, etcetera. After each one of those, it appears that there's a G, and then an AE. What does the G mean, do you know?
A G means that that submittal goes to the government for review. AE means that it goes to the architectural firm for review on behalf of the government.
Q When it goes to the government for review, would that have been you?
A Possibly.
Q Do you know whether it was you with respect to the windows?
A No. Generally these come into the ROICC office and then go right to the A and E.
Q Let's go to Page 4 and Paragraph 2.1.8. Do you see that?
A Um-hmm.
Q That says Type P, as in papa, dash HC, as in hotel, Charlie, space 40, space parens, optional performance glass, closed parens, period. Do you see that?
A Yes.
Q Do you know what the P stands for?
A No.
Q Do you know what the HC stands for?

A No.
Q Do you know what the 40 stands for?
A No.
Q Do you know what the optional performance glass is?
A No.
Q Do you know whether there is such a window in the AAMA?
A No.
Q Was that a representation in the Navy's contract that the contractor was required to provide an HC -- strike that -- P-HC 40, parens, optional performance glass window?
A Say that again? Was that?
Q Was that a representation that the contractor was required to provide that?
A Yes, I guess so.
Q Was it a representation that that window exists?
A I would assume it exists.
Q That's not the question. Was it a representation by the Navy that that window exists?
MR. COLT: I'm sorry, I don't know if Mr. Moyer can testify what the Navy was representing. He can testify what he knew, but I don't think he can


e3f17cf1-0865-43a7-a27d-c089332e976a

speak for the Navy.
BY MR. FRANCIS:
Q Do you have an understanding as to whether this contract document and this paragraph we're talking about was a representation to Maropakis that that window existed and can be provided?
A I'm not sure how to answer that.
Q You don't know?
A I assume it represents a window that's -- that exists.
Q Would you agree with me that if that window did not, in fact, exist, that that would be an error or omission under this contract?
MR. COLT: Objection. I don't know if Mr. Moyer can testify about the legal significance of a contract provision. He can testify about the engineering aspects of this case, but I don't know if he can testify about the implications for contract interpretation.
MR. FRANCIS: Well, I'm not asking him about whether it was attachable. I'm asking him --
BY MR. FRANCIS:
Q Do you have an understanding what an error is? It's a mistake, right?

A Yes.
Q Would you agree with me that specifying a window in a contract that doesn't exist is a mistake?
MR. COLT: Objection. I don't think Mr. Moyer is able to testify to this.
MR. FRANCIS: Are you telling him not to answer?
A I don't prepare the master specs.
BY MR. FRANCIS:
Q That's not the question.
A Somebody else does.
Q Okay. That's not the question. Do you have an understanding, Mr. Moyer, as a Registered Professional Engineer in the Commonwealth of Pennsylvania, as to whether a specification in a public contract which identifies a window that does not exist is an error? Yes or no?
A Would that legally be an error? I don't know.
Q As an engineer. Would it be an error?
A I suppose it would.
Q Did anyone from Gale tell you, or anyone else from the Department of the Navy, that they had identified a window that does not exist in

# EXHIBIT F

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

M. MAROPAKIS CARPENTRY, INC., :
PLAINTIFF :
:
VS : NO. 03-2825C
:
THE UNITED STATES, : (JUDGE BASKIR)
DEFENDANT :

DEPOSITION OF: LONNIE R. MOYER

TAKEN BY: PLAINTIFF

BEFORE: KAREN BLOUCH, RMR
NOTARY PUBLIC

DATE: APRIL 13, 2005, 9:00 A.M.

PLACE: RHOADS & SINON
ONE SOUTH MARKET SQUARE
HARRISBURG, PENNSYLVANIA

APPEARANCES:

RHOADS & SINON
BY: DAVID W. FRANCIS, ESQUIRE

FOR - PLAINTIFF

U.S. DEPARTMENT OF JUSTICE
BY: JAMES D. COLT, ESQUIRE
AND
DEPARTMENT OF THE NAVY
BY: ALAN CARAMELLA, ESQUIRE

FOR - DEFENDANT



e3f17cf1-0865-43a7-a27d-c089332e976a

not sure that that's required. Do you know of any other types of projected windows that were identified in the contract documents?

A No.

Q Do you know whether, in fact, that window exists, the P-HC 40, parens optional performance glass, do you know whether that window, in fact, exists either?

A I assume it exists.

Q Do you agree with me that it would be an error in the contract documents for the Navy specification to identify a window that doesn't exist?

A It may be considered an error.

Q Let's talk about the water resistance test that's specified in Paragraph 2.1.5. The 20 pounds per square foot. Do you see that?

A Yes.

Q Do you know whether P-HC 40 windows are designated under the AAMA as being tested at 20 pounds per square foot?

A No, I don't.

Q For water resistance?

A I'm sorry. No, I don't.

Q Do you know whether the AAMA

# EXHIBIT G

ORIGINAL



V I R G I N I A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

------------------------------X

M. MAROPAKIS CARPENTRY, INC., :

Plaintiff, :

VERSUS, : 03-2825C

THE UNITED STATES OF AMERICA, :

Defendant. :

------------------------------X

Fairfax, Virginia

Friday, May 6, 2005

Deposition of

**GARY W. BROWN, P.E.,**

a witness, called for examination by counsel for the plaintiff, pursuant to notice and agreement, in the offices of Gale and Associates, Inc., 11781 Lee Jackson Highway, Fairfax, Virginia 22033, beginning at approximately 1:05 o'clock p.m., before LeShawne M. Thompson, a Verbatim Court Reporter and a Notary Public in and for the Commonwealth of Virginia at large, when there were present on behalf of the respective parties:

LT05-068

A You said maximum instead of minimum, I believe.

MR. FRANCIS: Can I have this marked as -- why don't we mark it as Gale 1.

(The document referred to below was marked Gale Deposition Exhibit Number 1 for identification.)

BY MR. FRANCIS:

Q I am going to hand you what has been marked as Gale Exhibit 1 for identification. It is a copy of the AAMA standard, 101-93 and as set forth in the contract documents. Have you ever seen this document before?

A I am sure I have.

Q Can we turn to page 20 -- I am sorry, page 35 of this document, the AAMA 101.

A Yes.

Q And look at the paragraph on the bottom right-hand corner, it says in recognition of this.

A Yes.

Q Go ahead and read it to yourself.

A Okay.

Q Does that paragraph provide that the water resistance test pressure is never tested more than 12

pounds per square foot?

MR. HUTCHISON: Objection. I would note it says required, the required pressure. It does not say that it can never exceed that.

BY MR. FRANCIS:

Q Can you read the sentence into the record, please, Mr. Brown?

A I am sorry. Can you repeat your question?

Q Can you just read that sentence into the record?

A In recognition of this, water resistance is generally determined at a pressure of less than the design pressure. The required water resistance test is commonly conducted at a pressure equal to 15 percent of the design pressure for R C and HC products, 20 percent for AW products, but never less than 2.8 psf, 132 pascals, no more than 12 psf, 575 pascals.

Q Is it your understanding that the sentence that you just read does not provide that you may not test windows with a water test pressure in excess of 12 psf under this AAMA 101?

MR. HUTCHISON: Objection.

THE WITNESS: There are certain -- it

allows for pressure equal to 15 percent of the design pressure. So if you have got excessive design pressures there are times when it will go greater than 15 -- I am sorry, 12 psf.

BY MR. FRANCIS:

Q Let me just see if I understand what you are saying. Are you saying that if you have a window that is designated with a higher design pressure, let's call it 133 ounce per square foot, that that would result in a water resistance test pressure in excess of 12?

A Can you repeat the question? I was reading that again.

Q Is it your testimony that if a window is designated as let's say a PHC 200, that that allows for testing of the water resistance test pressure at more than 12 pounds per square foot?

A No, after rereading that I see that 12 is the max.

Q So, do you believe that you can have an AAMA certified window that exceeds that provision that is tested at greater than 12?

MR. HUTCHISON: Objection.

THE WITNESS: The test gives you a result,

the result being 12 or less to 2.86, and then it would be approved by AAMA. Anything outside of those standards, whether it is less than 2.86 or greater than 12, does not fall within AAMA.

BY MR. FRANCES:

Q Question: Do you know whether the windows that were specified in the contract documents had to be certified as complying with AAMA?

A Yes, it lookS like they would have to.

Q Why don't we go to page four of the specifications. Under paragraph 2.1.8, projected windows, there is a designation of PHC40, parens, optional performance class, close parens. Do you see that?

A Yes, I do.

Q Is that a reference to an actual window?

A Yes. Performance class, yes.

Q Well, do you believe that there is in fact under the AAMA PHC40, parens, optional performance class, close parens, window?

A Yes, I believe you can find those types of windows.

Q Well, I gave you -- that is not the

# EXHIBIT H

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

M. MAROPAKIS CARPENTRY, INC., :
PLAINTIFF :
:
VS : NO. 03-2825C
:
THE UNITED STATES, : (JUDGE BASKIR)
DEFENDANT :

DEPOSITION OF: LONNIE R. MOYER

TAKEN BY: PLAINTIFF

BEFORE: KAREN BLOUCH, RMR
NOTARY PUBLIC

DATE: APRIL 13, 2005, 9:00 A.M.

PLACE: RHOADS & SINON
ONE SOUTH MARKET SQUARE
HARRISBURG, PENNSYLVANIA

APPEARANCES:

RHOADS & SINON
BY: DAVID W. FRANCIS, ESQUIRE

FOR - PLAINTIFF

U.S. DEPARTMENT OF JUSTICE
BY: JAMES D. COLT, ESQUIRE
AND
DEPARTMENT OF THE NAVY
BY: ALAN CARAMELLA, ESQUIRE

FOR - DEFENDANT



e3f17cf1-0865-43a7-a27d-c089332e976a

Q Do you know whether anyone else from the Department of the Navy had any communications with Gale regarding whether the water resistance test pressure that was identified in the contract documents are in conformance with the AAMA 101?
A No, I don't.
Q Do you know whether Gale had ever determined that to be the case?
A Gale sent a letter back with three manufacturers that they believed met that spec.
Q Do you know whether the windows that they identified as meeting that specification were, in fact, the P-HC 40 windows, parens, optional performance glass, closed parens?
A No, I don't know.
Q Do you know if they exceeded that designation?
A No, I don't.
Q Did you have any conversations with anyone at the Department of the Navy regarding the air infiltration of the windows on this project?
A No. Not that I recall.
Q Do you know what air infiltration is?
A I assume it's air leaks in the window.
Q Let's go to Paragraph 2.1.4 of the

specifications. Do you see that?
A Yes.
Q Specifically, Subparagraph B, air infiltration test, parens, operable units, closed parens, do you see that?
A Yes.
Q What does that identify the air infiltration as not exceeding?
A .10 cubic feet per minute per foot.
Q Do you know whether the operable units that are identified are the projection windows?
A No, I don't.
Q Do you know whether there were any documents that describe what the air infiltration for a P-HC 40 window is?
A No, I don't.
Q I'm going to show you what was marked as Exhibit 3 yesterday, Plaintiff's Exhibit 3. Do you recognize that document?
A Yes.
Q What is it?
A It's an e-mail that I wrote to my boss, and then he wrote back to me.
Q There's two e-mails on it, correct?
A Yes.

# EXHIBIT I

ORIGINAL



V I R G I N I A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

------------------------------X

M. MAROPAKIS CARPENTRY, INC., :

Plaintiff, :

VERSUS, : 03-2825C

THE UNITED STATES OF AMERICA, :

Defendant. :

------------------------------X

Fairfax, Virginia

Friday, May 6, 2005

Deposition of

**GARY W. BROWN, P.E.,**

a witness, called for examination by counsel for the plaintiff, pursuant to notice and agreement, in the offices of Gale and Associates, Inc., 11781 Lee Jackson Highway, Fairfax, Virginia 22033, beginning at approximately 1:05 o'clock p.m., before LeShawne M. Thompson, a Verbatim Court Reporter and a Notary Public in and for the Commonwealth of Virginia at large, when there were present on behalf of the respective parties:

LT05-068

AAMA; do you know?

A Condensation resistance factor.

Q What else?

A Air infiltration, thermal transmission.

Q Anything else?

A Not for the window frame. Some for glazing.

Q Can you tell me which of the specification provisions that are set forth in section 08520 other than the water resistance test pressure that we talked about, that are consistent with the designation of HC40?

A The air infiltration is greater than the minimum requirements by AAMA.

Q So it is different? The air infiltration requirement is higher than the HC40 designated in the contract?

A As specified, the air infiltration is higher than designated by AAMA's minimum standards.

Q Okay.

A The CRF does not have anything to do with this particular AAMA section.

Q What particular AAMA section?

A With 101. I believe it is the

# EXHIBIT J

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M. MAROPAKIS CARPENTRY, INC., PLAINTIFF | : | |
| VS | : | NO. 03-2825C |
| THE UNITED STATES, DEFENDANT | : | (JUDGE BASKIR) |

DEPOSITION OF: ABDULQADER RANGWALLA

TAKEN BY: DEFENDANT

BEFORE: TERESA K. BEAR, REPORTER
NOTARY PUBLIC

DATE: APRIL 15, 2005, 9:10 A.M.

PLACE: RHOADS & SINON
ONE SOUTH MARKET SQUARE
HARRISBURG, PENNSYLVANIA

APPEARANCES:

RHOADS & SINON
BY: DAVID W. FRANCIS, ESQUIRE

FOR - PLAINTIFF

U.S. DEPARTMENT OF JUSTICE
BY: JAMES D. COLT, ESQUIRE

FOR - DEFENDANT

question. It's been asked and answered.
BY MR. COLT:
Q I'm going to refer you to a portion of the specs, Section 01110, in the document production provided by Plaintiff. It is Bates Numbers M0212 through M0219. I'm going to refer you, Mr. Rangwalla, to paragraph -- this will be marked as --
MR. FRANCIS: It is marked.
MR. COLT: It is marked already?
MR. FRANCIS: This is Number 1, Defense Exhibit 1.
MR. COLT: I believe, Counsel, that it's -- there was Plaintiff's Exhibit 2, but that's a different section. That's section --
MR. FRANCIS: Defendant's Exhibit 1, your exhibit.
MR. COLT: I stand corrected. It's already been marked Defendant's Exhibit 1.
BY MR. COLT:
Q You're familiar with the specs, are you not --
A Yes.
Q -- in the contract? And I'd refer you to Paragraph 1.5 of that.
A 1.5.

Q Take your time to read it, if you need, Paragraph 1.5. Let me know when you're done.

A I finished reading Paragraph 1.5 indicated in the specification Section 01110, page 3.

Q What is the title of that section?

A Construction sequence.

Q And doesn't it require that the window work be completed before the roof work?

A It does.

Q And you understood this requirement, didn't you?

A Yes.

Q In fact, I'm going to refer you to Defendant's Exhibit 6.

(Letter dated 8/20/01 produced and marked as Defendant's Exhibit No. 6.)

BY MR. COLT:

Q This is a letter from Maropakis which you wrote, at least it has your name, and it's dated August 20th, 2001. Have you seen this before? It's in the Plaintiff's document production. It's Bates Number M0001 through M0004. Do you recall writing this letter or do you recognize it?

MR. FRANCIS: Objection, asked and answered. You can answer it again.

BY MR. COLT:
Q It has your signature, doesn't it?
A Yes. And I wrote this letter, yes.
Q And, in fact, in Paragraph 2, could you read that, please?
A The contract requires that the window work must be performed prior to the roofing work.
Q Thank you very much. So this was a contract requirement and Maropakis acknowledged that this was a contract requirement of the specs, is that true?
A Yes.
Q Did Maropakis feel that the Navy had an obligation to allow it to proceed with roof work when the windows were incomplete?
A This is a request, not that Navy should allow it or not.
Q But you made the request?
A We made the request to avoid further delays.
Q And the Navy --
A Rejected it.
Q -- insisted that you hold to the contract sequence?
A True, that's true.
Q Mr. Rangwalla -- and we're just about done.