**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| M. MAROPAKIS CARPENTRY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2825C |
| v. | ) | |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

## I. ARGUMENT:

**BECAUSE THE NAVY FAILED TO MEET ITS BURDEN OF DEMONSTRATING ANY UNDUE DELAY, PREJUDICE, OR FUTILITY IN THE PROPOSED FIRST AMENDED COMPLAINT, MAROPAKIS'S MOTION SHOULD BE GRANTED**

In its brief, Defendant, the United States (hereinafter "the Navy") cites three (3) reasons why M. Maropakis Carpentry, Inc.'s (hereinafter "Maropakis") Motion should be denied: (1) undue delay; (2) undue prejudice; and (3) futility. As discussed *infra*, the Navy failed to sustain its burden on any of these issues, and Maropakis's Motion for Leave to File its First Amended Complaint should be granted.

### A. Because the Information upon which Maropakis Relies to Support its Motion for Leave to File a First Amended Complaint was Only Recently Obtained Through Discovery, The Navy Failed to Show that Maropakis Deliberatively Delayed in Seeking Leave to File an Amended Complaint.

As the Court of Appeals for the Federal Circuit has clearly announced, the non-movant bears the burden of demonstrating why leave to amend should not be granted. Senza-Gel Corp., et al. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986). The mere fact that an amendment is offered late in the case is not enough to bar it; amendments may be offered at trial, or even after

trial. Id. Following this principal, as stated in State of Alaska v. U.S., only "*[E]xcessive* delay in certain circumstances can be a reason for such denial." 15 Cl. Ct. 276, 280 (1980) (emphasis in original). In Alaska, the Claims Court permitted the plaintiff leave to amend its complaint, thirteen (13) months after the filing of its original complaint, finding that the defendant failed to present any evidence that the plaintiff deliberatively delayed in seeking leave to amend. See id.

In its Brief in Opposition to Maropakis's Motion for Leave to Amend, the Navy claims that "[Maropakis] should have been aware from the start of what allegedly caused its work to be excusably delayed," (Brief in Opposition, p. 8), and that "There is no excuse in Maropakis waiting till well after the close of discovery and the eve of summary judgment[1] to fundamentally change[2] its alleged justification for project delay based upon information to which it has long had access." (Brief in Opposition, p. 9).

The Navy's argument wholly ignores the practicalities surrounding the filing of Plaintiff's Motion for Leave to Amend at this present time, as compared to earlier in the litigation. Contrary to the Navy's baseless assertion, the information upon which Maropakis relies was not available until very recently. To substantiate Maropakis's argument, this Court need look no further than the dates of the depositions and written discovery upon which Maropakis relies to seek leave to amend its Complaint.

For instance, in support of its motion for leave to amend, Maropakis cites to the deposition of Lonnie R. Moyer, P.E., a civil engineer from the Navy, who admitted in his deposition that he was uncertain whether specified windows for the project even existed, and that

---

[1] This Court has issued an Order which suspends filing and briefing of the Motions for Summary Judgment. Based upon this Order, there is no prejudice to the Navy in having to address these issues now.

[2] Maropakis denies that it has fundamentally changed its justification for seeking the relief sought. The allegations set forth in the amended complaint are certainly within the scope of those pleadings and therefore already set forth.

to specify windows that did not exist is an error. (Brief in Support, pp. 4-5). *Moyer's deposition did not occur until April 13, 2005.*

Maropakis also relies upon the deposition of Gary Brown, a civil engineer for Gale Associates, who testified that design specification for the water resistance test pressures for the windows did not comply with industry standards. (Brief in Support, p. 5). *Brown's deposition did not occur until May 6, 2005.*

Additionally, Maropakis's motion for leave to amend cites to an e-mail between Moyer and Terrance L. Kline, dated November 11, 1999. (A true and correct copy of the aforementioned e-mail is attached as "Exhibit D" to Maropakis's Brief in Support.) This electronic correspondence clearly evidences the Navy's knowledge of the contract specifications being incorrect, and unequivocally admits that sharing this information with Maropakis may substantiate Maropakis's claim for delay damages:

> [T]he requirement in the spec is for a water resistance test of 20 psf with no leaks. This requirement should have been 10 psf or perhaps even lower. Bob Rosenberry has advised me that we should not revise this requirement at this time. **The consequences may be as follows: (1) The contractor used this item as an excuse for his time delay. A change now would justify his delays and may cost us for delays.** (2) LD's would be canceled. (3) Other bidders may file a complaint since they would have bid on the original spec.
> R/L. Moyer.

*This document was not provided to Maropakis until March, 2005.*

As such, the record is clear that the discovered information that Maropakis relies upon to seek leave to amend its complaint only came to light between March and May of 2005. Conversely, based upon the e-mail and the deposition testimony from the Navy and its professional, it is plain that the Navy did know there were severe defects in the specifications. Without the above-referenced information, Maropakis could not have amended its complaint

sooner. Therefore, Maropakis did not unduly delay in seeking leave to file an amended complaint.

In support of its argument, the Navy cites to Te-Moak Bands of Western Shoshone Indians of Nevada, et al. v. U.S., 948 F.2d 1258 (Fed. Cir. 1991). Te-Moak is clearly distinguishable from the instant facts, and actually supports Maropakis's argument that undue delay is not present.

The long chronology of Te-Moak is summarized as follows. In 1951, the Te-Moak Bands filed a claim before the Indian Claims Commission seeking relief for the alleged unlawful taking of lands without just compensation. Id. at 1259. The Te-Moak Bands amended their accounting claim petition in 1967, and again in 1973. See id. at 1261. Little-to-no activity occurred in the matter again until 1982, when the Te-Moak Bands filed supplemental and amended exceptions to the General Services Accounting report, which was done in 1968. See id. The Claims Court concluded that the exceptions fell beyond the scope of the original petition, and denied the amendments. On appeal, however, the Federal Circuit court addressed the issue of whether the Te-Moak Bands should have been granted leave to amend under F.R.C.P. 15(a).

In concluding the Te-Moak Bands should not have been granted leave to amend, the Federal Circuit found that the amendment could have been made earlier in the litigation. See id. at 1262. Specifically, the Federal Circuit noted that the information the amendment was based upon was previously in the possession of the Te-Moaks Bands, and it was not information which had recently come to light. Id. The Federal Circuit concluded that the Te-Moaks possessed the relevant information for at least eight (8) years prior to seeking the amendment. Id. Based on the unusual passage of time, and the Te-Moak Bands' "multiple earlier amendments," the

Federal Circuit affirmed the decision of the lower court, and barred the amendments to their claims. Id. at 1263.

Unlike Te-Moak, the instant record is clear that the information Maropakis primarily relies upon for leave to amend has only recently come to light through discovery. It cannot logically be argued that Maropakis could have amended sooner without first possessing this information. Also noteworthy, unlike Te-Moaks, this is Maropakis's first motion for leave to amend. Accordingly, the Navy failed to sustain its burden of demonstrating that Maropakis unduly delayed in seeking leave to amend its complaint, and Maropakis's Motion for Leave to Amend should be granted.

### B. The Navy Failed to Demonstrate That it Would be Severely Disadvantaged or Incapable of Presenting Facts or Evidence on the Issues Raised in Maropakis's Proposed First Amended Complaint.

In demonstrating that it will be prejudiced by the filing of an amended complaint, the non-moving party has the burden of showing that it will be "severely disadvantaged or incapable of presenting facts or evidence" on this new issue. Scott Timber Co. v. U.S., 44 Fed. Cl. 170, 182 (1999), aff'd in part, rev'd in part, 333 F.3d 1358 (Fed. Cir. 2003). Indeed, if the non-movant is unable to make a "firm showing of undue or substantial prejudice, as a matter of law, the amendment must be allowed." St. Paul Fire and Marine Ins. Co. v. U.S., 24 Cl. Ct. 518, 521 (1991) (citation omitted).

For example, in Scott Timber, the defendant claimed it would be unfairly prejudiced if the plaintiff were permitted leave to file an amended complaint that added an additional theory of recovery. Scott Timber, 44 Fed. Cl. at 182. Despite the defendant's boilerplate statement, this Court found that the defendant faced no significant burden in responding to the plaintiff's amended complaint, and that the new claim was based on the same operative facts as the

plaintiff's original claim. Id. Additionally, this Court found the defendant would not be inconvenienced by the need to respond to the plaintiff's additional claims, noting that the alleged level of "inconvenience" did not amount to the requisite prejudice to deny the plaintiff's request. Id.

Instantly, the Navy generally avers that it will be prejudiced if leave to amend is granted. However, the Navy's argument is weak and unpersuasive. First, the Navy relies upon Griffy's Landscape Maintenance LLC v. U.S., 51 Fed. Cl. 667 (2001), for the proposition that the Court does not have a favorable view of litigants who "shift ground, discarding legal theories and offering new ones." (Brief in Opposition, p. 10). As the author of Griffy's, Your Honor is well aware that the issue before the Court in Griffy's involved a bid protest, and was not whether a party should be granted leave to amend a complaint.

Furthermore, it cannot be said that Maropakis has in anyway shifted ground in its proposed amendment; indeed, Maropakis simply seeks to narrow—not broaden—its claims against the Navy. As outlined and discussed more fully in its Brief in Support, Maropakis's proposed amended complaint narrows the issues to be litigated. For instance, in its original Complaint, Maropakis averred that the criteria imposed in the specifications for the aluminum windows to be replaced was non-traditional and not readily available in the marketplace. After conducting discovery, Maropakis has now learned that these windows did not exist, and seeks to amend its complaint to reflect this recently-learned information. This is not, as the Navy alleges, an entirely new claim; rather, it is a narrowing of the issues based upon the same set of operative facts.

The Navy also argues that, if Maropakis is permitted to amend its complaint, then the Navy will have to answer allegations related to whether the windows at issue ever existed.

(Brief in Opposition, p. 11). Contrary to Scott Timber, the Navy neither avers that this is an impossible burden for it to meet, nor that it is incapable of producing evidence on this matter. Similar to the defendant in Scott Timber, the Navy simply alleges prejudice without any additional arguments or evidence to support is averment. In fact, the evidence is to the contrary, and these issues were fully addressed during the depositions of Terrance L. Kline, Moyer, Brown, and Robert Rosenberry. Counsel for the Navy was present at all of the aforementioned depositions and had an opportunity to and indeed did question these witnesses on issues related to the windows. Therefore, the Navy has not met its burden on demonstrating that it will be severely disadvantaged and incapable of presenting facts or evidence if this Court grant's Maropakis's Motion for Leave to Amend. Therefore, Maropakis's motion should be granted.

### C. The Navy Failed to Sustain its Burden of Showing that Maropakis's Claim for a Reduction in Liquidated Damages is Frivolous.

Finally, the Navy argues that "**some**" of Maropakis's proposed amendments do not state a valid claim. (Brief in Opposition, p 12) (emphasis added). Specifically, the Navy alleges that Maropakis's challenge to the contractually-mandated liquidated damages clause must fail because the law is clear that liquidated damages may be imposed even where the damages sustained are less than what the parties stipulated. (Brief in Support, p. 12).

Initially, Maropakis notes that the Navy seems confused by the proposed amended pleading. Maropakis pleads that legitimate excuses existed to justify any alleged delay in the project. As such, the liquidated damages claimed by the Navy should be reduced. In contrast, the Navy apparently believes the proposed amendment seeks to reduce the Navy's liquidated damages claim based upon the position that the Navy did not incur additional costs to the project. The Navy's reading of Maropakis's proposed amendment is not correct.

Nevertheless, even assuming the Navy's strained reading of Maropakis's proposed amendment was accurate, Maropakis's claim is not futile. In Scott Timber, this Court defined a "futile" amendment as one that is "frivolous and insufficient on its face." Id. at 182 (citations omitted). Even though the Scott Timber court agreed with the defendant that the plaintiff faced "significant obstacles" in proving the merits of its proposed claim, the law was clear that the proposed amendment should be granted and the claim properly heard. Id. (citing Effingham County Bd. of Edu. v. U.S., 9 Cl. Ct. 177, 181) (1985) (explaining that Rule 15 does not require the court to reach the legal merits of the claim being added). Therefore, Maropakis's claim that the Navy's charge for liquidated damages should be reduced is not futile, and Maropakis's motion for leave to amend should be granted.

## II. CONCLUSION:

Based on the foregoing, and the arguments addressed in Plaintiff's Brief in Support of its Motion for Leave to File its First Amended Complaint, Maropakis respectfully requests that its motion for leave to amend be granted.

Respectfully submitted,

RHOADS & SINON LLP

By: ______________________

David W. Francis
Kelly H. Decker
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Attorneys for Plaintiff

Date: August 8, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2005, a true and correct copy of the foregoing REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

James D. Colt, Esq.
United States Department of Justice
Commercial Litigation Branch, Civil Division
Classification Unit
1100 L Street, N.W., 8th Floor
Washington, DC 20530

David W. Francis