Defendant's Exhibit 1

4. Please refer to paragraph 2 of Defendant's Counterclaim. Identify each instance supporting your claim that Plaintiff failed to perform its contractual obligations. A complete answer will contain the contractual obligation you contend that Maropakis was required to perform, the specific contractual obligation you allege Maropakis' failed to perform, the dates of the alleged failure to perform, written notice of the alleged failure. Attach all supporting documentation.

**ANSWER:**

5. Identify all information in the Navy's possession with respect to the window manufacturer and the window specifications prior to and at the time of the bid. A complete answer will include all information provided to the prospective bidders, all testing performed by the Navy and/or its consultants concerning the window specifications, all correspondence between the Navy and its consultants regarding the window specifications, and all estimates concerning window manufacturers.

**ANSWER:**

Defendant's Exhibit 2

Q But would you describe it as professional on both sides?

A Professional in the sense that Mr. Rosenberry used to come to the site a few hours and that's it.

Q But was it contentious? Was it a contentious --

A Yeah, it's professional.

Q Now let's talk about some specifics. The windows, Maropakis claimed that there was delay related to finding windows that could meet the specifications.

A Yes.

Q What problems were there in meeting the specifications for the windows?

A The only problem we had that -- after awarding the contract, we started looking for a window supplier that could meet the requirements of the specs.

Q After contract award?

A Yes. As soon as we got the award, we started looking for a supplier to find a proper window manufacturer who could meet the required contract documents. We had a very hard time for several months to find a proper contractor who could meet, you know, the requirements of the required specifications.

Q What was the problem?

A Mainly the problem was the testing results, the requirement of the testing that --

Q What about the windows would fail to meet the testing requirement?

A The water resistant test.

Q Now, you're referring to the requirement that it -- the window be able to withstand 20 pounds per square foot?

A Ounce per square foot. That's true.

Q Ounce per square foot?

A Right.

Q Was there anything else?

A Air infiltration test.

Q Anything else?

A That's it.

Q So you started looking for a manufacturer after the contract award, is that correct?

A Yes.

Q When did you tell the Navy about your problems finding a manufacturer?

A I don't recall the date, but several times we mentioned in writing to the Navy that we are having a hard time to find a proper window supplier who could meet, you know, the required specifications.

Q But you don't remember the date?

A I exactly don't remember the date, but several times, several occasions we did mention in writing. Of course, in the year 1999. I don't know the date, but the year 1999.

Q This was all in the year 1999?

A Right.

Q Who did you tell at the Navy?

A Mr. Rosenberry.

Q Anybody else?

A I don't recall the name of each and every individual person, but I did inform others also, the people who were in charge of these projects.

Q Who were those people?

A The contracting officers.

Q Do you remember their names?

A I don't exactly remember. There are so many names.

Q Have you worked on other projects either with the Navy or other sorts of government contracting?

A No.

MR. FRANCIS: Hold on. Can you restate that?

MR. COLT: I'm sorry, has Maropakis -- I keep forgetting that Mr. Abdul is not testifying personally, he's testifying for Maropakis.

BY MR. COLT:

Q Has Maropakis handled other government contracts?

A I don't know.

MR. FRANCIS: No, no, no. Do you mean has Maropakis performed as a general contractor on other government projects ever?

BY MR. COLT:

Q Has Maropakis performed other -- been a prime contractor on other contracts involving the Navy?

A I don't know.

Q Was it Maropakis' responsibility to find suppliers for the project?

A Yes.

Q But the Navy helped you to find a window manufacturer, did it not?

A The Navy didn't help, we requested for the help.

Q And did the Navy provide names?

A Yes.

Q Which manufacturer eventually provided the windows?

A J. Sussman.

Q Now, one thing to clear up here, J. Sussman created the windows that met the requirements. What was

YonCon's responsibility?

A Installer, subcontractor to install the windows.

Q Just so I understand it, J. Sussman produced the windows that met the contract, is that correct?

A Window manufacturer -- J. Sussman is the window manufacturer and YonCon is window installer.

Q When did YonCon get the -- when did they bring the windows onto the site to install them or bring them on site, bring them on the base -- strike that, the whole question.

When did the windows come on the site, the new windows?

A The windows came to the site sometime in June but windows were ready on March 2nd.

Q Let me refresh your memory. In prior discovery Maropakis has admitted that it got the windows on site on May 31st, 2000. Does that accord with your recollection?

MR. FRANCIS: This deposition will go a lot faster if you would simply refresh his recollection by putting documents in front of him, rather than asking him to try to remember specific dates. It's going to result in a misleading deposition. Do you want to show him the

interrogatories to look at?

Abdul, don't get a document out. Make Mr. Colt provide a document to you, it's his deposition, if he's going to cross-examine you on something like that. Mr. Colt, do you have a copy of the interrogatory and the answer so we can have it marked and put into the record?

MR. COLT: I believe that answers to written discovery can be put before the court otherwise and that date has been admitted.

BY MR. COLT:

Q Mr. Rangwalla, you mentioned another date when the windows were ready. When were the windows ready?

MR. FRANCIS: Do you have a document to refresh his recollection on that? You know, he could answer every single one of these questions where you don't have a document with can you please provide me with a document to refresh my recollection.

BY MR. COLT:

Q I'm going to show you what will be marked, after I make a copy, as Defendant's Exhibit 2. This is Maropakis' document production, Bates Number M0125. It is a letter from -- under the letterhead YonCon addressed to Maropakis and it's dated June 21st, 2000 and it's signed by the president of YonCon. Does this refresh your recollection?

Defendant's Exhibit 3

4. Maropakis objects to the Requests for Admission to the extent they require Maropakis to provide information or identify documents already known to or in the possession of Defendant or its agent.

5. Maropakis expressly reserves the right to object to further discovery into the subject matter of the Requests to Admission and to object to the introduction into evidence of any responses to the Requests to Admission.

6. Maropakis expressly reserves the right to supplement the within responses as it deems necessary.

**REQUEST FOR ADMISSION NO. 1:**

The Navy did not impose any window specification requirements that were not contained in the solicitation or the contract that initiated the project.

**RESPONSE:**

Admitted with qualification. It is admitted that the plans, drawings and specifications for the project contained certain specification requirements for the windows. These specifications also identified certain AAMAs and ASTMs which were also part of the contract. It is denied that the plans, drawings and specifications with respect to the windows were error free. The specifications contained representations as to the performance of the windows that was contrary to the designation of the windows in the specifications. This fact was known to the Navy but not disclosed to Maropakis.

**REQUEST FOR ADMISSION NO. 2:**

On February 18, 1999, in Modification 0002, the Navy specifically disallowed the use of asphalt as a roof adhesive.

4. Maropakis objects to the Interrogatories to the extent they require Maropakis to provide information or identify documents already known to or in the possession of Defendant or its agent.

5. Maropakis expressly reserves the right to object to further discovery into the subject matter of the Interrogatories and to object to the introduction into evidence of any responses to the Interrogatories.

6. Maropakis expressly reserves the right to supplement the within responses as it deems necessary.

**INTERROGATORY NO. 1:**

If you refused to admit the truth of Defendant's Request for Admission No. 1, please identify any window specification requirements that the Navy imposed that differed from the specifications in the solicitation and contract initiating the project.

**RESPONSE:**

To the extent a response is required, Maropakis states that the specifications for the windows were defective, the Navy knew the specifications were defective, but improperly held Maropakis to incorrect standards. By way of additional answer, more information can be ascertained from a review of the project documents, including, but not limited to, specification Section 08520, the AAMAs, the ASTMs, the testing reports and submittals.

**INTERROGATORY NO. 2:**

If you refused to admit the truth of Defendant's Request for Admission No. 3, please describe the basis for your contention that the Navy assumed responsibility for finding a window