IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| M. MAROPAKIS CARPENTRY, INC., Plaintiff | No. 03-2825C |
| v. | |
| THE UNITED STATES Defendant | (Judge Baskir) |

**M. MAROPAKIS CARPENTRY, INC.'S BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS, CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MAROPAKIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

This is M. Maropakis Carpentry, Inc.'s ("Maropakis") *Brief In Opposition To The Defendant's Motion To Dismiss, Cross-Motion For Summary Judgment, And In Reply To Defendant's Response In Opposition To Maropakis Motion For Partial Summary Judgment* ("the United States Motion"). As an initial matter, Maropakis notes that it is very difficult—if not impossible—to respond to all of the factual averments set forth in a statement of uncontested facts that has not yet been agreed to by both parties. Maropakis anticipates that it may be prejudiced by this. Accordingly, Maropakis specifically reserves the right to supplement this brief once the factual averments set forth in the statement of undisputed facts are agreed to and it is filed with the Court.[1]

[1] Maropakis understands that it may be appropriate to file a Motion seeking this right and will do so if appropriate.

## II. ARGUMENT

### A. THE UNITED STATES IS NOT ENTITLED TO PREVAIL ON ITS MOTION TO DISMISS.

#### 1. Maropakis Fully Complied With Its Obligations Under the Contract Disputes Act.

The United States asserts that Maropakis never obtained a final decision from the contracting officer on its request for additional time on this project. Accordingly, the United States alleges that this court does not have jurisdiction. This argument is factually incorrect. The final decision no. #03-002F issued by the United States on December 20, 2002 addressed both Maropakis request for a 447 day time extension and the United States imposition of liquidated damages. A365-66.

Specifically, on June 28, 2002 the United States forwarded correspondence addressing both Maropakis' requests for a 447 day time extension and the imposition of liquidated damages. A800-01. That letter requested Maropakis to submit additional information and/or request a final determination from the contracting officer.

On July 22, 2002 Maropakis submitted a letter to the contracting officer specifically addressing its request for a time extension and the remission of liquidated damages. This letter specifically addressed Maropakis request for a time extension, the removal of lead paint, and delivery of the new monitor windows to the project site, and the imposition of liquidated damages. A802.

On December 20, 2002 the United States issued the above referenced final decision regarding Maropakis request for a time extension and for remission of liquidated damages. Accordingly, Maropakis did obtain a final decision of the contracting officer.

Maropakis had not duty to *certify* its claim for a time extension and remission of liquidated damages. In *Placeway Construction Corp. v. United States*, 920 F.2d 903 (Fed. Cir. 1990), a*mended by, on rehearing at, in part, Rehearing Denied* 36 Cont. Cas. Fed (CCH) P75,967 (Fed. Cir. 1990)—a leading decision on this topic not cited the by United States—the court specifically addressed the requirement that a contractor certify the assertion that liquidated damages are not due because the government caused the delay.[2] In that case the court held that a contractor can defend against the Government's withholding of liquidated damages on the basis that the Government caused the delay. In such an instance the contractor is not required to certify its claim. *Placeway*, 920 F.2d at 903.

2. **The United States Is Not Entitled to Recover Liquidated Damages Because It Has Not Been Harmed.**

Maropakis agrees with the United States assertion that liquidated damages are typically enforceable. However, where the United States has not been damaged, several Boards of Contract Appeals have ruled that the imposition of liquidated damages is an unenforceable penalty. As an example, in *Ford Constr. Co.*, AGBCA 241, 72-1 BCA ¶ 9275, the Board refused to impose liquidated damages to cover a period of delay where there was no chance of damage due to delay on the project. Similarly, in *Engineered Electric*, 84-2 ENGBCA ¶ 17,216 the board refused to enforce liquidated damages where there was no reasonable relation between

[2] To the extent Maropakis is requesting additional compensation above the contract balance and interest, it is not precluded from doing so. The Contract Disputes Act, 41 U.S.C. § 601, et seq. provides that the statute of limitations for submitting a claim to the contracting officer for a final decision is six years from accrual. 41 U.S.C. §605(a). Further the contract provides that claims must be submitted within six years of the accrual of the right to submit the claim to the contracting officer. In this case, Maropakis received correspondence from the United States on August 28, 2001 advising that it could file a request for a final decision on the denial of Maropakis claim for a time extension. A803. Accordingly, the statute of limitations for Maropakis to submit a claim to the contracting officer does not expire until August, 2007.

the amount imposed and the probable loss to the United States. Based upon this case law, summary judgment on this issue is not appropriate.

## B. THE SPECIFICATIONS FOR THE MONITOR WINDOWS WERE DEFECTIVE. ACCORDINGLY, THE UNITED STATES IS NOT ENTITLED TO SUMMARY JUDGMENT AND MAROPAKIS IS.

Then United States ignores a great deal of critical and uncontested evidence in arguing that the window specifications were not defective. The most important ignored evidence is as follows:

First, the United States does not address the fact that the specifications identified a window that does not exist. Specifically, the specifications requires Maropakis to supply "Type P-HC 40 (Optional Performance Class)" windows. As explained in Maropakis Motion for Partial Summary Judgment, each of these terms (i.e. "P," "HC," "40" and "optional performance class") have a specific meaning under the ANSI/AAMA 101. Under the ANSI/AAMA there is no such thing as a "P-HC 40 (Optional Performance Class)" window. Accordingly, the United States specified a window that simply does not exist.

Second, the United States ignores the requirements in the contract that the windows supplied bear a label warranting that the product complies with the ANSI/AAMA 101. The appendix to the ANSI/AAMA specifically mandates the maximum[3] water resistance test pressure as 12psf, as follows:

> [W]ater resistance is generally determined at a pressure less than the Design Pressure. The required Water Resistance Test is commonly conducted at a pressure equal to 15% of the Design Pressure for R, C and HC products (20% for AW products) but never less than 2.86 psf (132 Pa) nor more than 12 psf (575 Pa).

(emphasis supplied).

---

[3] The United States incorrect argues that his is a "required" standard, and not a maximum standard.

Further, a table appearing in the ANSI/AAMA also provides that the maximum water resistance test pressure is 20 psf, as follows:

| | | |
|---|---|---|
| Design Pressure | = | Performance Class |
| Structural Test Pressure | = | 1.5 x Design Pressure |
| Water Resistant Test Pressure | | |
| R, C & HC | = | 1.5 x Positive Design Pressure* |
| AW | = | 20x Positive Design Pressure |
| | | ***(Maximum 12 psf)** |

(emphasis supplied) The windows specified by the United States requires a water resistance test pressure of 20 psf, well in excess of the maximum permissible under the ANSI/AAMA scheme. Accordingly, it was impossible to supply windows that provided a water resistance test pressure of 20 psf and that complied with the ANSI/AAMA 101. Just because Maropakis ultimately supplied windows[4] purporting to comply with the ANSI/AAMA 101 does not mean that the windows were not in contravention of those ANSI/AAMA mandatory provisions.[5]

The United States' attempt to distinguish the *R.P. Wallace* case is without merit. In *R.P. Wallace, Inc. v. The United States*, 63 Fed. Cl. 402 (2004), the contractor was responsible for replacing all existing exterior windows. The contract specifications called for "true" muntins and a "design pressure" of 65 psf.

[4] The United States argues that Maropakis erred in not investigating the availability of the specified windows before it entered into the contract. However, on its face, the windows specified by the United States are standard type windows that most manufacturers can easily fabricate and deliver. The ambiguities and errors in the window specification was not apparent until Maropakis provided submittals from manufacturers that were rejected by the United States.

[5] The United States argues that the emails containing the admission that the water resistance test pressure should have been 10 psf or even lower was because the United States recognized that its specified requirements exceeded what it needed is simply not credible. As explained in Maropakis Motion for Summary Judgment, Mr. Moyer who wrote the email testified that the assumed the information about the excessive water resistance test pressure came from the engineer. *See* (Moyer dep. at p. 63, ln. 3 – 19) – attached to Maropakis' motion as exhibit F.

The United States rejected R.P. Wallace's submittal for windows because it proposed using "false" muntins. In response , the contractor told the United States it was impossible to build an a window using "true" muntins that also complied with the contract's design pressure of 65 psf. In other words, the United States could have windows with "true" muntins, or windows that satisfied the specified design pressure, but it could not have both.

This case is not unlike the *R.P. Wallace* case. Here, the United States can have ANSI/AAMA compliant windows or it can have windows with a water resistance test pressure of 20 psf. It cannot have both.[6]

## C. THE UNITED STATES' REFUSAL TO ALLOW MAROPAKIS TO BEGIN REPLACEMENT OF A PORTION OF THE ROOF WAS ARBITRARY AND CAPRICIOUS.

The United States is mistaken in its argument that the monitor windows were located above the roof. There were two roofs on this project—the principal roof ("the lower roof")[7] and the roof above the monitors themselves ("the high roof"). The monitor windows were located *below* the high roof. Maropakis sought to begin roof work on the high roof.

The contract documents specifically provided that the replacement window work had to be completed before replacement of the main roof (lower roof) because of the threat that contractors could damage the new roof by walking on it. The contract stated:

> 1.3 FAR 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984) – ALTERNATE I (APR 1984)
>
> The Contractor shall be required to:
>
> * * *

[6] There is no dispute about the fact that the United States cannot have a P-HC 40 (optimal performance class) window, as it does not exist.

[7] The lower roof was significantly larger than the high roof and should be interpreted as "the main roof" under the contract documents.

> (e) Sequence of operation. The contractor shall complete installation of the windows and exterior insulation and finish system on the monitors <u>before roofing installation is done on the main roof deck</u>. <u>This is to avoid construction operations taking place on top of newly installed EPDM roofing</u>.

Contract at 00720 Page 2 (emphasis supplied). A804.

In this instance, there was no threat that the workmen would be walking on or otherwise damaging the high roof while working on the monitor windows. The United States has not provided any non-arbitrary basis for its refusal to allow Maropakis to replace the roof in that area. The United States ignores that aspect of the design in its response to Maropakis' motion. For these reasons, summary judgment should not be entered in favor of the United States.

## D. <u>THE PARTIES AGREE ON THE LEAD PAINT ISSUE.</u>

The United States agrees that Maropakis is entitled to a time extension because it discovered undisclosed lead paint on the project and that the duration of the time extension should be addressed at trial.

## E. THE UNITED STATES IMPLIEDLY ACCEPTED <u>MAROPAKIS' USE OF ASPHALT FOR THE ROOF.</u>

The United States erroneously argues that it is entitled to judgment as a matter of law upon this claim because Maropakis did not follow contract procedures for requesting a variation to the contract requirements, nor did the Government implicitly waive the contract's requirements for use of non-asphalt materials.

FAR 52.246-12(i) requires the Government to "accept as promptly as practicable after completion and inspection, all work required by the contract," unless otherwise specified. FAR 46.407(g) requires that notices of rejection "be furnished promptly to the contractor . . . because, if timely notice of rejection is not furnished, acceptance may, in certain cases, be implied as a

matter of law." Acceptance may be implied if notice of rejection is not given within a reasonable time after delivery or completion. *See William F. Klingensmith, Inc.*, GSBCA 5451, 83-1 BCA ¶ 16,201. The length of time that is reasonable depends upon the nature of the work, the difficulty of inspection, and the impact of delay on the contractor.

In this case, on August 6, 1999, Maropakis' submittal indicated that it would use Type III asphalt. This submittal was approved on August 9, 1999. More than ten (10) months later, the Navy noticed that Maropakis had asphalt at the project site and directed Maropakis to use asphalt. Under the circumstances presented here, ten months cannot be considered timely rejection and therefore, acceptance of Maropakis' use of asphalt was implied.

## III. CONCLUSION

For the reasons set forth herein, Maropakis respectfully requests this court deny the United States Motion and grant Maropakis motion in its entirety.

Respectfully submitted,

RHOADS & SINON LLP
By: /s/David W. Francis
David W. Francis
Kelly H. Decker
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146
(717)-233-5731
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2007, a true and correct copy of the foregoing document entitled M. Maropakis Carpentry, Inc.'s Brief in Opposition to the Defendant's Motion to Dismiss, Cross-Motion for Summary Judgment, and in Reply to Defendant's Response in Opposition to Maropakis' Motion for Partial Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/David W. Francis
David W. Francis