# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M. MAROPAKIS CARPENTRY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2825C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

ALAN R. CARAMELLA
Senior Trial Attorney
NAVFAC Litigation Office
Washington, D.C. 20374-5051

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed,
May 29, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Maropakis Has Failed To Satisfy The Jurisdictional Requirements Of The CDA For Its Government-Caused Delay Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Maropakis Has Not Established That The Liquidated Damages Provision In The Contract Operated As An Unenforceable Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. The Specifications For The Monitor Windows Were Not Defective And Maropakis Was Eventually Able To Provide Monitor Windows That Conformed To The Specifications . . 11

IV. The Government Reasonably, And In Accordance With The Contract, Denied Maropakis' Request To Begin Work On The Roof Before The Windows Were Replaced . . . . . . . . . . 16

V. The Government Does Not Agree That Maropakis Is Entitled To An Additional Time Extension For Lead Paint Removal . . 18

VI. The Government Did Not Implicitly Accept The Use Of Asphalt For The Roof Contrary To Contract Requirements . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

Page

## Federal Cases

Am. Elec. Contracting Corp. v. United States,
217 Ct. Cl. 338, 579 F.2d 602 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 13

Blake Constr. Co. v. United States,
28 Fed. Cl. 672 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Cascade Pac. Int'l v. United States,
773 F.2d 287 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cegers v. United States,
7 Cl. Ct. 615 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conner Bros. Constr. Co. v. United States,
65 Fed. Cl. 657 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Davies Precision Mach., Inc. v. United States,
35 Fed. Cl. 651 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Elgin Builders, Inc. v. United States,
10 Cl. Ct. 40 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hercules, Inc. v. United States,
24 F.3d 188 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Higgs v. United States,
212 Ct. Cl. 146, 546 F.2d 373 (1976) . . . . . . . . . . . . . . . . . . . . . . . . 9

Kinetic Builder's Inc. v. Peters,
226 F.3d 1307 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Maxwell Dynamometer Co. v. United States,
181 Ct. Cl. 607, 386 F.2d 855 (1967) . . . . . . . . . . . . . . . . . . . . . . 17

Medina Constr., Ltd. v. United States,
43 Fed. Cl. 537 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Morganti Nat'l, Inc. v. United States,
49 Fed. Cl. 110 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

North Star Alaska Hous. Corp. v. United States,
__ Fed. Cl. __, 2007 WL 1041442 (Fed. Cl. Apr. 2, 2007) . . . . . . . . . 3

P&D Contractors, Inc. v. United States,
25 Cl. Ct. 237 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Placeway Constr. Corp. v. United States,
920 F.2d 903 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

R.P. Wallace, Inc. v. United States,
63 Fed. Cl. 402 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

Ralph Larson & Son, Inc. v. United States,
17 Cl. Ct. 39 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Safeco Credit & Fraley Assocs., Inc. v. United States,
44 Fed. Cl. 406 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

Sun Eagle Corp. v. United States,
23 Cl. Ct. 465 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wise v. United States,
249 U.S. 361 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Federal Statutes

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4

## Federal Regulations

FAR § 52.246-12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Additional Authorities

Elter S.A., ASBCA No. 52327,
01-1 BCA ¶ 31,421, 2001 WL 520825 (May 3, 2001) . . . . . . . . . . . 20

Restatement (Second) of Contracts § 356 cmt. b (1981) . . . . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| M. MAROPAKIS CARPENTRY, INC., Plaintiff, | ) | No. 03-2825C (Judge Baskir) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION <u>TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), and this Court's order dated May 16, 2007, defendant, the United States, respectfully submits this reply in support of its motion to dismiss and cross-motion for summary judgment, filed on February 6, 2007. Plaintiff's response to these motions was filed on April 30, 2007.

<u>SUMMARY OF THE ARGUMENT</u>

In our opening brief, we moved to dismiss plaintiff's amended complaint, with the exception of the appeal of the liquidated damages assessment, because the claim for Government-caused delay contained in the amended complaint was never presented as a certified claim to the contracting officer, as required by the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a), (c). Additionally, we moved for summary judgment upon

plaintiff's appeal of the Department of the Navy's ("Navy") demand for payment for liquidated damages because the Navy applied the liquidated damages provision set forth in the contract, and the contract was completed 467 days past the contract completion deadline. Accordingly, the Government was entitled to liquidated damages.

Assuming this Court finds that it does possess jurisdiction to entertain plaintiff's Government-caused delay claim, we additionally moved for summary judgment upon plaintiff's claim that the window specifications were defective, upon plaintiff's claim that the Navy implicitly waived the non-asphalt adhesive requirement of the contract, and upon plaintiff's claim that the Navy unreasonably failed to modify the contract's sequence of performance. Finally, we argued that plaintiff failed to demonstrate in its motion for summary judgment that it was entitled to an additional time extension above and beyond the 14 days already granted by the Navy due to the discovery of lead paint at the project site.

In its response in opposition to our motions, plaintiff, M. Maropakis Carpentry, Inc. ("Maropakis"), argues that it fully complied with the jurisdictional prerequisites of the CDA; that the Navy is not entitled to recover liquidated damages because it has not been harmed; that the specifications for the monitor windows were defective; that the Navy

unreasonably refused to allow Maropakis to replace "the high roof" before the monitor windows were installed; that the parties agree on the lead paint issue; and that the Navy implicitly accepted Maropakis' use of asphalt for the roof. As we will demonstrate below, Maropakis' arguments are without merit.

## ARGUMENT

### I. Maropakis Has Failed To Satisfy The Jurisdictional Requirements Of The CDA For Its Government-Caused Delay Claim

As we demonstrated in our opening brief, Maropakis' complaint before this Court alleges multiple instances of Government-caused delay during the course of contract number N62472-97-C-4116 ("the contract"). Def. Mot. at 15-16.[1] We further demonstrated that claims by a contractor against the Government must be in writing, submitted to the contracting officer for a final decision, and claims of more than $100,000 must be certified by the contractor. Id. at 16 (citing 41 U.S.C. § 605(a), (c)(1)). Failure to submit a claim in accordance with these provisions deprives this Court of jurisdiction to consider that claim. See North Star Alaska Hous. Corp. v. United States, __ Fed. Cl. __, 2007 WL 1041442, *27 (Fed. Cl.

[1] "Def. Mot.__" refers to defendant's brief in support of its motion to dismiss, cross-motion for summary judgment and response in opposition to plaintiff's motion for partial summary judgment, filed on February 6, 2007.

Apr. 2, 2007). We argued that Maropakis' August 20, 2001 letter to the contracting officer did not constitute a claim under the CDA because it did not request a sum certain, did not request a final decision, and it was not certified pursuant to 41 U.S.C. § 605(c)(1). Def. Mot. at 18; A 371-74.[2] Therefore, we moved to dismiss Maropakis' Government-caused delay claim for lack of jurisdiction.

Maropakis argues in response that the final decision on liquidated damages issued by the contracting officer on December 20, 2002 addressed both Maropakis' request for a 447 day time extension and the Navy's claim for liquidated damages. Pl. Resp. at 2.[3] However, the December 20, 2002 final decision only addressed Navy's assessment of liquidated damages against Maropakis. A 365-66. We do not dispute that this Court possesses jurisdiction to entertain Maropakis' appeal of the Navy's assessment of liquidated damages. However, this Court does not possess jurisdiction to entertain Maropakis' claim for Government-caused

---

[2] "A__" refers to the appendix, which will be filed contemporaneously with the parties' Consolidated Statement of Uncontroverted Facts, at the completion of briefing in this matter.

[3] "Pl. Resp.__"refers to plaintiff's brief in opposition to the defendant's motion to dismiss, cross-motion for summary judgment, and in reply to defendant's response in opposition to plaintiff's motion for partial summary judgment, filed on April 30, 2007.

delay because that claim was never presented to the contracting officer requesting a sum certain and a final decision, nor was it certified. See Elgin Builders, Inc. v. United States, 10 Cl. Ct. 40, 44 (1986).

Maropakis' August 20, 2001 letter to the contracting officer requests "an extension of contract time" for a total of 447 days and lists the reasons therefor. A 371. On August 28, 2001, the contracting officer responded to the letter denying the request for the time extension, but noting that this response was "not a Final Decision of the Contracting Officer," and permitting Maropakis to submit additional information and request a final decision pursuant to the Disputes Clause of the contract. A 369-70. On July 18, 2002, the Navy sent another letter to Maropakis noting that Maropakis had never responded with additional information to the contracting officer's August 28, 2001 letter, nor had it requested a contracting officer's final decision. A 367. On July 22, 2002, Maropakis responded to this letter saying that it disagreed with the time extensions given for the contract modifications, had requested a time extension for the removal of lead paint, and that Maropakis was not responsible for the time delays. A 802. Maropakis' letter concluded that it would dispute the liquidated damages assessment. Id. Nowhere did this letter request a contracting officer's final decision, request a sum certain, or contain a

certification. Accordingly, the final decision issued on December 20, 2002, demanded payment from Maropakis in the amount of $59,514 for liquidated damages in excess of the remaining contract balance, but it was not a final decision on Maropakis' Government-caused delay claim. A 365-66.

Maropakis had a duty to certify its claims for Government-caused delay over $100,000. See 41 U.S.C. § 605(c)(1). Maropakis relies upon the Federal Circuit's decision in Placeway Construction Corp. v. United States, 920 F.2d 903 (Fed. Cir. 1990), for the proposition that it was not required to certify its Government-caused delay claim. The Federal Circuit in Placeway held that the Claims Court had jurisdiction over a final decision on a Government claim even though the Government's claim was not certified because the decision was adverse to the contractor. Placeway, 920 F.2d at 907. In accordance with this decision, we are not disputing the Court's jurisdiction over Maropakis' appeal of the contracting officer's final decision demanding payment for liquidated damages.

In a situation analogous to this case, where the plaintiff was challenging a Government claim to liquidated damages and making its own contractor claim to recover amounts withheld for liquidated damages, this Court's predecessor, the Claims Court held, after consideration of the

Federal Circuit's decision in Placeway, that the contractor's claim to recover amounts withheld for liquidated damages must be certified. Sun Eagle Corp. v. United States, 23 Cl. Ct. 465, 477 (1991) (Order on Reconsideration).

> In the case at bar, plaintiff is seeking an adjustment of contract terms or monetary relief because it defends against the assessment of liquidated damages on the basis that the Army caused the delay. The claim is a claim by the contractor . . . Plaintiff's contractor claim must be certified, as required by 41 U.S.C. § 605(c).

Sun Eagle, 23 Cl. Ct. at 482. Likewise, in this case, Maropakis' claim that the Navy caused delay on the project is a contractor claim, over $100,000, which should have been presented as a certified claim to the contracting officer. Because Maropakis never presented a certified claim to the contracting officer for Government-caused delay, all counts of its amended complaint alleging Government-caused delay should be dismissed by this Court.

Additionally, to the extent that Maropakis is requesting damages above and beyond the contract balance, it is precluded from doing so because, as Maropakis admits, it has not presented claims requesting additional compensation to the contracting officer. See Pl. Mot. at 3 n.2. As noted above, this Court does not possess jurisdiction to entertain CDA

claims that have never been presented to the contracting officer. See Medina Constr., Ltd. v. United States, 43 Fed. Cl. 537, 546 (1999).

## II. Maropakis Has Not Established That The Liquidated Damages Provision In The Contract Operated As An Unenforceable Penalty

Maropakis now argues that the Navy's imposition of liquidated damages was an unenforceable penalty. Pl. Resp. at 3. Without relying upon any evidence in support of its argument, Maropakis generally argues that the liquidated damages provision in the contract was unenforceable because there was no reasonable relation between the amount assessed and the damage incurred by the Navy due to the delay on the project. Pl. Resp. at 4-5. Therefore, Maropakis has failed to meet its burden of proving that the liquidated damages clause was unenforceable.

"When the amount of damages is difficult to predict, a liquidated damages clause will generally be upheld unless the court determines that the parties must have intended a penalty rather than liquidated damages." Safeco Credit & Fraley Assocs., Inc. v. United States, 44 Fed. Cl. 406, 412 (1999) (citations omitted). In this case, the Navy relied upon the Navy Contracting Manual, the NAVFAC P-68, to determine the proper amount of liquidated damages to include in the contract. See Nihoff Aff. ¶¶ 2, 6, A 451-52. "The government is entitled to the presumption that damages

assessed in accordance with the NAVFAC P-68 are reasonable." Safeco Credit, 44 Fed. Cl. at 412 (citing P&D Contractors, Inc. v. United States, 25 Cl. Ct. 237, 240 (1992)).

Maropakis bears the burden of establishing that the liquidated damages clause in this contract was intended to operate as a penalty. Safeco Credit, 44 Fed. Cl. at 413. As we noted in our opening brief, Maropakis' contract provided that Maropakis would pay $650 for each day of delay. Def. Mot. at 24 (citing A 67). In order to determine whether a contract provision provides for liquidated damages or whether it is in fact a penalty, it is necessary to make three inquiries. Safeco Credit, 44 Fed. Cl. at 413. The first inquiry is whether the parties intended liquidated damages or a penalty. Id. (citing Wise v. United States, 249 U.S. 361 (1919); Higgs v. United States, 212 Ct. Cl. 146, 546 F.2d 373, 377 (1976)). In this case, the terms of the contract itself demonstrate the parties' intent to provide for liquidated damages and not a penalty. See A 67. Also, Maropakis entered into the contract aware of the liquidated damages provision. See A 16; Nihoff Aff. ¶ 8, A 452. Accordingly, the plain language of the contract is evidence that the parties intended the contract clause to provide for liquidated damages.

The second inquiry is whether the amount of damages that would be

caused by a breach is uncertain in the amount or difficult to determine. Safeco Credit, 44 Fed. Cl. at 413 (citations omitted). In this case, the building that was the subject of the contract, Building 110 at the Naval Inventory Control Point ("NICP") in Mechanicsburg, Pennsylvania, was used by the Defense Logistics Agency ("DLA") as a warehouse. A 707. The DLA utilized the building to store supplies, which it shipped out in response to orders. Id. Accordingly, it would have been difficult to determine, at the time the contract was executed, the amount of damages that would be caused by a contract breach, and it was reasonable for the Navy to set the liquidated damages rate in accordance with the NAVFAC P-68. The third and final inquiry is whether the amount of damages bears a reasonable relationship to the actual damages that could be sustained in the event of a breach. Safeco Credit, 44 Fed. Cl. at 413 (citing Restatement (Second) of Contracts § 356 cmt. b (1981)) ("[T]he amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss."). Maropakis failed to challenge the contract on this point at the time of execution, see Nihoff Aff. ¶ 8, A 452, and now years after completion of the contract, argues that the Government may not assess liquidated damages that are greater than the actual damages incurred.

However, it is well-settled that liquidated damages can be imposed even though the damages sustained are less than those to which the parties stipulated. Cegers v. United States, 7 Cl. Ct. 615, 620 (1985) (citations omitted); see also Safeco Credit, 44 Fed. Cl. at 414 ("even if the amount of damages might be greater than the actual damages, that alone does not make the liquidated damage rate per se unreasonable).

Because Maropakis has failed to respond to our motion for summary judgment with any evidence that the liquidated damages provision was unenforceable, the Government is entitled to summary judgment on Maropakis' appeal of the liquidated damages assessment.

III. The Specifications For The Monitor Windows Were Not Defective And Maropakis Was Eventually Able To Provide Monitor Windows That Conformed To The Specifications

In our opening brief, we demonstrated that the contract specifications for the monitor windows were not defective, and the Navy had the right to insist upon compliance with the specifications. Def. Mot. at 25-34. Maropakis responds to our motion for summary judgment arguing that the monitor window specifications were defective and specified a window that did not exist by requiring a water resistance test pressure of 20 pounds per square foot ("psf"). Maropakis further contends that this case is indistinguishable from the facts before the Court in R.P. Wallace, Inc. v.

United States, 63 Fed. Cl. 402 (2004). Pl. Resp. at 4-6.

Maropakis' argument ignores the clear language of the contract. As we demonstrated in our opening brief, the contract specified that "except as otherwise indicated" the windows should "comply with air infiltration tests, water resistance tests, and applicable load tests specified in ANSI/ AAMA 101 . . . ." A 287; Def. Mot. at 26-27. Therefore, the window performance and testing requirements could differ from the requirements of ANSI/AAMA 101[4] where otherwise indicated. One such example was where the contract required a water resistance test of 20 psf for the monitor windows. A 288. This water resistance test was higher than that described in the ANSI/AAMA 101; however, such a requirement would clearly fall under the "except as otherwise indicated" language in the window specification section of the contract.

It is well established that the Government "may require performance both in excess of, or below, the standard normally accepted in trade." Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 46 (1989). Additionally, where a contractor eventually performs work in accordance

[4] American National Standards Institute ("ANSI")/ American Architectural Manufacturers Association ("AAMA") 101-93 , Voluntary Specifications for Aluminum and Poly (Vinyl Chloride) (PVC) Prime Windows and Glass Doors (1993). See A 375-76.

with the specifications, the contractor has "an extraordinarily heavy burden to establish that the specifications are defective." Davies Precision Mach., Inc. v. United States, 35 Fed. Cl. 651, 670-71 (1996). In this case, Maropakis was eventually able to provide windows that met the specifications. See A 440-45. Additionally, the windows that were eventually installed at the project site did not result in a defective or unsafe product. Cf. Hercules, Inc. v. United States, 24 F.3d 188, 197 (Fed. Cir. 1994), aff'd 516 U.S. 417 (1996) (noting that when the Government includes detailed specifications in a contract, it impliedly warrants that if the contractor follows those specifications, the resultant product will not be defective or unsafe). Moreover, it is also well-settled that the Government has the right to insist upon compliance with contract specifications. Cascade Pac. Int'l v. United States, 773 F.2d 287, 291 (Fed. Cir. 1985); Am. Elec. Contracting Corp. v. United States, 217 Ct. Cl. 338, 350, 579 F.2d 602, 608 (1978); Blake Constr. Co. v. United States, 28 Fed. Cl. 672, 688 (1993).

In its response brief, Maropakis appears to argue, for the first time, that the window specifications contained a latent ambiguity, which was not apparent until Maropakis provided submittals from window manufacturers that were rejected by the Navy. Pl. Resp. at 5 n.4. "A contract is

ambiguous where there are two reasonable interpretations that are consistent with the contract language." Conner Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 667 (2005) (citation omitted). Maropakis has not demonstrated that its interpretation of the contract was reasonable. Maropakis argues that the windows could not comply with both the ANSI/AAMA 101 and the more stringent testing requirements provided in the specifications. Pl. Resp. at 6. However, this interpretation ignores the clear language of the contract that provided that the windows comply with the testing requirements of the ANSI/AAMA 101 "except as otherwise indicated." A 287. Therefore, the specifications permitted the Navy to require testing requirements more stringent than those provided in ANSI/AAMA 101. If the language of a contract is unambiguous, the Court must accept its plain meaning. Conner Bros. Constr., 65 Fed. Cl. at 667 (citation omitted).

The window specifications in this contract are distinguishable from the facts before the Court in R.P. Wallace, Inc. v. United States, 63 Fed. Cl. 402 (2004). The building in the R.P. Wallace case was a historic structure, and the contract specifications called for "replacement windows that conformed to the building's historic appearance and, therefore, differed from standard office-building windows in several respects." 63

Fed. Cl. at 404. The contractor advised that it was impossible to provide the windows specified in the contract because "it was impossible to build an aesthetically acceptable window using true muntins that complied with the contract's wind resistance requirements." Id. at 406. The Navy eventually issued a variance for the window specifications regarding the muntins because the specifications required a window that was impossible to manufacture. Id.

In contrast, in this case, the Navy never issued a variance regarding the window specifications. Maropakis was able to provide custom-made windows that met the ANSI/AAMA 101 and the more stringent testing requirements set forth in the Navy's specifications. A 407, 443-45. Just because the testing requirements were more stringent than those provided in the ANSI/AAMA 101 does not mean the windows were impossible to manufacture. As we noted in our opening brief, the Government "may require material specifications more or less stringent than the standards normally accepted in a trade or industry at the time." Blake Constr., 28 Fed. Cl. at 688-89 (citing Ralph Larsen, 17 Cl. Ct. at 46); see Def. Mot. at 31. Accordingly, the facts of this case are distinguishable from the facts before the Court in R.P. Wallace, and the Government is entitled to judgment as a matter of law that the window specifications were not

defective.

## IV. The Government Reasonably, And In Accordance With The Contract, Denied Maropakis' Request To Begin Work On The Roof Before The Windows Were Replaced

In our opening brief, we argued that the Navy was entitled to insist upon compliance with the sequence of performance provided in the contract. Def. Mot. at 38-40. The contract specifications set forth the construction sequence for the project and required the removal of the existing monitor windows and the installation of the new monitor windows before roofing work could begin. A 103-04. In its response, Maropakis argues that there were actually two roofs on the project– the main roof and the roof above the monitor windows themselves. Pl. Resp. at 6. Maropakis contends that the Government unreasonably refused to allow Maropakis to replace the roof above the monitor windows before the monitor windows were replaced. Id. at 6-7.

However, this argument does not accurately reflect the request to modify the contract's performance sequence that Maropakis made to the Navy before the window work was completed. On September 14, 1999, Maropakis sent a letter to the Navy requesting to begin roofing work prior to the installation of the new monitor windows:

> In order to avert further delays, requests were made

> to start the roofing work prior to the new window installation. The work will start with the asbestos abatement, new roofing, window removals, EIFS, and then followed by the new window installation. . . Maropakis is respectfully requesting approval to perform the roof work prior to the windows. This will allow the project to proceed. Maropakis will take all necessary precautions to protect the roof after its installation.

A 403. Maropakis' letter did not specify or limit its request to begin the roof work to <u>only</u> the roof work above the monitor windows. Instead, Maropakis requested to start the "roofing work" prior to the new window installation. After this request was denied by the Navy on September 16, 1999, A 404, Maropakis "again respectfully request[ed] permission to commence the roof work immediately to take advantage of the favorable weather and avert delays." A 405-06. Again, no mention was made of limiting the roof work to <u>only</u> the roof above the monitor windows. Therefore, the Navy again denied Maropakis' request to modify the sequence of performance for the contract.

In any event, the Navy was entitled to strict compliance with the contract requirements. <u>See</u> <u>Maxwell Dynamometer Co. v. United States</u>, 181 Ct. Cl. 607, 628, 386 F.2d 855 (1967) (noting that the Government is entitled to strict compliance without regard to whether contractor believes this is prudent or desirable). The contract required the removal of the

existing monitor windows and the installation of the new windows before the removal and installation of the new roof systems. A 104. The sequence of performance did not differentiate between the main roof and the roof above the monitor windows. It required all roof work to be completed after the window work was completed. A 104. The Navy reasonably denied Maropakis' request because the sequence of performance was established to insure that the roof would not be damaged during window installation.

## V. The Government Does Not Agree That Maropakis Is Entitled To An Additional Time Extension For Lead Paint Removal

In its motion for partial summary judgment, Maropakis argued that the Court should find that it is entitled to an additional time extension for lead paint removal beyond the 14-day time extension already granted by the Navy. Pl. Mot. at 20.[5] Maropakis asked for this additional time extension to be determined at trial. Id. at 1. We responded that: 1) Maropakis has not demonstrated that it is entitled to a time extension above and beyond the 14 days granted in modification P0001 to the contract; and 2) Maropakis should not be granted summary judgment that

[5] "Pl. Mot.__" refers to plaintiff's motion for partial summary judgment, filed on December 14, 2006.

it is entitled to an additional time extension. Def. Mot. at 40-43. Maropakis responds that the parties are in agreement that Maropakis is entitled to a time extension and the amount should be addressed at trial. Pl. Resp. at 7. However, the parties are not in agreement. The Government does not believe that Maropakis is entitled to an additional time extension, nor has Maropakis demonstrated, with evidence, that it is entitled to an additional time extension. Maropakis has not provided evidence that the discovery of lead paint affected the activities on the critical path. See Kinetic Builder's Inc. v. Peters, 226 F.3d 1307, 1317 (Fed. Cir. 2000). Moreover, Maropakis has the burden of establishing by a preponderance of the evidence not only the existence of excusable delay but also the extent to which completion of the contract work as a whole was delayed. Morganti Nat'l, Inc. v. United States, 49 Fed. Cl. 110, 132-33 (2001) (citations omitted). Maropakis must establish by a preponderance of the evidence that it is entitled to an additional time extension and the duration of the additional time extension. Because Maropakis has not established any of the above, this Court should not grant judgment as a matter of law that Maropakis is entitled to an additional time extension.

VI. The Government Did Not Implicitly Accept The Use Of Asphalt For The Roof Contrary To Contract Requirements

In its response brief, Maropakis argues that the Navy implicitly accepted the use of asphalt for the roof, even though the contract specifically provided that asphalt could not be used. Pl. Resp. at 7-8; see also A 15 (amendment to solicitation deleting the use of hot asphalt as an adhesive for roof insulation or wood fiberboard). Maropakis argues that because the Navy approved Maropakis' submittal indicating that it would use Type III asphalt, and did not object to the use of asphalt until June 2000, the Navy implicitly accepted the use of asphalt on the project. Pl. Resp. at 8.

However, when a variation is sought from contract requirements, there is a specific procedure that needs to be followed pursuant to the terms of the contract. We summarized this procedure in our opening brief, Def. Mot. at 35-36, and noted that Maropakis never sought a variation from contract requirements in order to use asphalt on the project. Id. Moreover, approval of submittals does not relieve the contractor of its contractual obligations. See Elter S.A., ASBCA No. 52327, 01-1 BCA ¶ 31,421, 2001 WL 520825 (May 3, 2001) ("Without notice of a deviation from the contract requirements, approval of a submittal does not relieve a contractor from

complying with contract requirements.”). Nor did the presence of Navy personnel at the work site constitute “acceptance” of the use of asphalt materials. See FAR § 52.246-12(c), (d) (Government inspections do not constitute or imply acceptance, and the presence or absence of Government inspectors does not relieve the contractor from any contract requirement).

In this case, the Navy did promptly notify Maropakis that asphalt was not permitted soon after work began on the project. The roof work had not been completed, and, in fact, contract work had just recently begun on June 22, 2000, A 426, when the Navy directed Maropakis to comply with the contractual requirements regarding the use of asphalt on June 28, 2000. See A 393-94. Therefore, the Navy promptly directed Maropakis to comply with the contract requirement for non-asphalt adhesive, and the Navy never implicitly accepted the use of asphalt. Accordingly, the Government is entitled to judgment as a matter of law on this claim.

## CONCLUSION

For these reasons and the reasons set forth in our opening brief, we respectfully request that the Court grant our motion to dismiss for lack of jurisdiction and motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

OF COUNSEL:

ALAN R. CARAMELLA
Senior Trial Attorney
NAVFAC Litigation Office
Washington, D.C. 20374-5051

s/ Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed,
May 29, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad