**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| M. MAROPAKIS CARPENTRY, INC., PLAINTIFF<br><br>v.<br><br>THE UNITED STATES OF AMERICA, DEFENDANT. | Docket No. 03-2825C<br><br>Judge Lawrence Baskir |

**M. MAROPAKIS CARPENTRY, INC.'S SUPPLEMENTAL BRIEF**

This is M. Maropakis Carpentry, Inc.'s ("Maropakis") Supplemental Brief pursuant to the Court's Order of June 12, 2008.

## I. MAROPAKIS' CHALLENGE TO THE UNITED STATES ASSESSMENT OF LIQUIDATED DAMAGES

### A. History of the Claim

In order to understand Maropakis' position, it is important to review the history of dealings between the parties. A quick discussion of this history is as follows:

- August 20, 2001: Maropakis submits a written claim to the Navy's OIC NAVFAC requesting an extension of time on the project. (DA 231 to DA 374). This letter addresses, among other things, the defective window specifications, the performance of roofing work, the discovery of lead paint, and the delay in rejecting the asphalt for the roof. It does not request additional compensation for delay, extra work, additional work, differing site conditions, or any other basis.
- August 28, 2001: The Contract Negotiator denies Maropakis' August 20, 2001 request for an

extension of time. The denial states that Maropakis can submit additional information supporting its request and/or request a Final Decision from the Contracting Officer ("CO").

- June 28, 2002: The CO sent correspondence to Maropakis (express mail) addressing Maropakis August 20, 2001 time extension request. The letter states that Maropakis has not supplied additional information in support of its position and assesses liquidated damages in amount of $303,550. The letter sets off Maropakis remaining contract balance of $244,035.00 against the $303,550 and demands payment of the difference in the amount of $59,514.00 within 30 days. Finally, it provides that if payment is not made in 30 days, a Final Decision will be issued. (DA 367-368).

- July 18, 2002: CO sends same letter as June 28, 2002 by Certified Mail, Return Receipt Requested. Demands payment of $59,514.00 within thirty days, or a Final Decision will be issued. (DA 800 to 801).

- July 22, 2002: Maropakis responds to June 28, 2002 letter from CO. Its letter states that Maropakis is not responsible for delays, and will dispute liquidated damages in the amount of $303,550. (DA 802). In context of the exchange of correspondence, this is a request for a final decision.

- August 17, 2002: Expiration of thirty day period. Maropakis did not issue payment to United States.

- October 31, 2002: Meeting between Maropakis and CO at which time Maropakis provided additional information for CO to consider.

- December 20, 2002: CO issues Final Decision. This reiterates United States' position that

Maropakis is responsible for $303,550 in liquidated damages, and that it has set off Maropakis' contract balance of $244,035 against liquidated damages. Accordingly, Maropakis must pay the United States the remaining $59,514. (DA 265 to 366).

- December 16, 2003: Maropakis original complaint requests final payment and remission of liquidated damages. It does not address or request damages for extra or additional work, differing site conditions, or delay.

**B. Maropakis Was Not Required To Certify Its Claim With The United States**

Section 605(a) of the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a) requires the certification of all contractor claims against the government that exceed $100,000. However, it does not require the certification of challenges to government claims.

In *Placeway Constr. v. United States*, 18 Cl. Ct. 159, (1989), *aff'd in part* 920 F.2d 903 (Fed. Cir. 1990), the Court of Claims and the Federal Circuit both held that the set off of a contract balance against the amount of liquidated damages is a government claim, and therefore certification is not required. 18 Cl. Ct. at 164, 920 F.2d 905.

This holding has been reiterated by the United States Court of Federal Claims. Recently in *Roxco, Ltd. v. United States*, 77 Fed. Cl. 138, 2007 LEXIS 195 (2007) this court applied the *Placeway* opinions. The Court stated that the United States' imposition of liquidated damages was a government claim, and that

the Court has Jurisdiction over a contractor challenge to a set off even though not certified. 77 Fed. Cl. at 147.

Applying this well-established principle to the chronology set forth above, Maropakis' has plainly challenged the set off of the contract balance against the liquidated damages. Accordingly, this Court has jurisdiction over Maropakis Complaint.

## II. A SCHEDULE ANALYSIS IS NOT REQUIRED FOR THIS MOTION

Submission of a schedule analysis to this Court is not required for purposes of the pending Motions for several reasons. First, the contract in this case did not impose an obligation upon Maropakis to prepare and/or submit a CPM schedule analysis during the performance of work. Second, the schedule of work in this case is fairly simple, and therefore no detailed CPM analysis is required to show a delay (DA 67). Third, Maropakis previously advised the Court that it would provide a schedule analysis at the trial (M. Maropakis Carpentry, Inc.'s Motion for Partial Summary Judgment, §IV.E, Case 1:03-cv-02825-LMB Document 83 at p. 24 of 26.). Fourth, Maropakis' correspondence in the file contains information regarding the impact to Maropakis' schedule of work.

Based upon these factors, a detailed CPM schedule analysis is not required.

## III. MAROPAKIS HAS ASSERTED A PROPER ARGUMENT BASED UPON DEFECTIVE WINDOW SPECIFICATIONS

Maropakis does not dispute that the United States may prepare and issue specifications requiring a contractor to provide customized windows that exceed industry standard. Maropakis' assertion in this case, however, is that the Specifications were defective because windows satisfying all requirements of the specifications could not be provided.

In this case, Maropakis was required to supply windows that complied with the requirements of the ANSI/AAMA 101. (DA 375 to 386) The Contract required Maropakis to supply a certification attesting that the windows complied with these requirements, as follows:

> 1.2 CERTIFICATION
>
> Each prime window unit shall bear the AAMA Label warranting that the product complies with the ANSI/AAMA 101. Certified test reports attesting that the prime window units meet the requirements of ANSI/AAMA 101. . . will be acceptable in lieu of product labeling.

(DA 285).

The ANSI/AAMA 101 identifies the minimum and maximum water resistance test pressures. The maximum identified is 12 psf. (DA 385, 386). The Contract Specifications required the installation of windows with a water resistance test Pressure of 20 psf. (DA 288). **<u>This water resistance test pressure</u>**

**requirement did not comply with the ANSI/AAMA 101.** Maropakis ultimately did supply windows meeting the 20 psf requirements. However, significantly, those windows did not comply with the ANSI/AAMA 10 because they exceeded the maximum permissible water resistance test pressure.

Maropakis argument is that the specifications were defective because they provided that windows complying with ANSI/AAMA 101 were acceptable, yet the specifications also required windows that did not comply with the ANSI/AAMA 101. As discussed in more detail in the briefs previously filed by Maropakis, its argument is supported by *R. P. Wallace, Inc. v. United States*, 63 Fed. Cl. 402, 2004 U.S. Claims LEXIS 329 (2004). In that case, the United States conceded that specifications containing conflicting criteria were defective.

## IV. MAROPAKIS' CLAIM BASED UPON ITS DISCOVERY OF LEAD PAINT ON THE MONITOR WINDOWS IS VALID

The lead paint was discovered on the monitor windows by Maropakis environmental remediation subcontractor Conservative Environmental Services, Inc. ("CES") on or about March 7, 2001. (DA 371). The lead paint was found when CES was removing asbestos transite panels from around the monitor windows. (DA 371). CES was not removing the windows when the lead paint was observed. On March 9, 2001 Maropakis directed its window installation subcontractor to refrain from delivering the windows to the project site until the lead paint issue was resolved. (Consolidated Statement of Uncontroverted Facts

¶108). Accordingly, Maropakis was not acting improperly when it notified the United States that it had encountered lead paint.

The Navy's justification for refusing to provide Maropakis additional time because of the discovery of lead paint contains errors, including its conclusion that the replacement windows were not yet available even though Maropakis directed its subcontractor not to deliver them. (DA at 432).

## V. THE UNITED STATES BREACHED THE CONTRACT BY DIRECTING MAROPAKIS NOT TO PERFORM WORK ON THE MONITOR ROOF

Although the United States now concedes that there were two roofs which required replacement, it has not always agreed with this. Correspondence between Maropakis and the Navy during the project reflects that the Navy was unaware that a portion of the roof was above the window elevation. (DA 403 and 404). Further, in *Defendant's Motion to Dismiss, Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* ("Defendant's Motion"), it did not address the existence of two roofs, and instead argued that Maropakis could not begin work on the roofs because of damage that would be caused when doing the window replacement work. (Defendant's Motion at 39).

The contract between the parties required Maropakis to submit to the United States its work schedule identifying the work areas and work to be performed on a

weekly basis. (DA 103). Maropakis' request to begin work on the roof included performance of work on the monitor roof. This request was submitted in accordance with the contract requirements. The Navy's refusal to permit Maropakis from performing this work was a material breach of the Contract. Maropakis is entitled to a time extension due to the delay incurred as a result of the Navy's improper rejection of Maropakis' schedule.

## VI. MAROPAKIS HAS A CLAIM THAT THE ASPHALT WAS ACCEPTED BY THE UNITED STATES ON THIS PROJECT

As explained in its reply brief, the Navy waited a period of 10 months between approval of its submittal and rejection. Under certain circumstances, such a lengthy delay can be implied as acceptance.

Moreover, a delay in disapproving material after acceptance is also an active interference in the work of the contractor. Maropakis is entitled to an extension of time based upon the Navy's tardy rejection of the asphalt.

## VII. THE IMPOSITION OF LIQUIDATED DAMAGES BY THE UNITED STATES IS IMPROPER

The Restatement of Contracts 2d, § 356 Liquidated Damages specifically addresses instances in which liquidated damages are unenforceable as penalties. Comment a. *Liquidated Damages or Penalty* to §356 addresses those instances in which liquidated damages are enforceable for public policy grounds because they are penalties.

This court has previously considered arguments made by a contractor that the liquidated damages clause incorporated into the contract was unenforceable. In *DJ Manufacturing Corp. v. United States*, 33 Fed. Cl. 357, 1995 U.S. Claims LEXIS 97 (1995), this court specifically addresses the argument raised by a contractor that the liquidated damages clause included in the Contract was an unenforceable penalty. The *DJ Manufacturing* Court held, *inter alia*, that liquidated damages clauses will be found unenforceable when its value is unreasonable in light of the anticipated damage anticipated. 33 Fed. Cl. at 360 to 361.

In this case, Maropakis has asserted that the liquidated damages amount claimed by the United States is an unenforceable penalty because the amount assessed during the initial period of delay is unreasonable in light of the anticipated costs.

As the United States has pointed out, and as Maropakis has agreed, at the beginning of the project Maropakis was not performing any work at the project site. Accordingly, the Navy had no expenses for onsite supervision, inspection, observation or management. Further, pursuant to the terms of the contract, the warehouse remained in operation during the work. (DA 103). Accordingly, there was no impact to the operation of the warehouse. The liquidated damages

provision of the contract did not envision such a delay, and therefore the imposition of liquidated damages is an unenforceable penalty.

## VIII. CONCLUSION

For all of the above reference reasons, Maropakis requests the entry of summary judgment in its favor and against the Navy as set forth herein.

Respectfully submitted,

RHOADS & SINON LLP
By: /s/David W. Francis_______
David W. Francis
Kelly H. Decker
One South Market Square
P.O. Box 1146
Harrisburg, PA 17108-1146
(717)-233-5731
Attorneys for Plaintiff

Date: June 26, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July, 2008 a true and correct copy of the foregoing *M. Maropakis Carpentry, Inc.'s Supplemental Brief* was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/David W. Francis
David W. Francis